**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | | |
|---|---|---|
| Case No. | **ED CV 26-684-JFW(RAOx)** | Date: February 24, 2026 |
| Title: | Aslam Khan -v- Warden, Desert View Annex, et al. | |

**PRESENT: HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Shannon Reilly | None Present |
| Courtroom Deputy | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFFS: | ATTORNEYS PRESENT FOR DEFENDANTS: |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):    ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER [filed 2/13/2026; Docket No. 4]**

On February 13, 2026, Petitioner Aslam Kahn ("Petitioner") filed a Motion for Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction ("Motion for TRO"). On February 20, 2026, Respondents filed a Response. On February 22, 2026, Petitioner filed a Reply. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument. The hearing calendared for March 2, 2026 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND[1]**

Petitioner is a citizen of India. On October 4, 2024, Petitioner left India and arrived in the United States at or near Otay Mesa, California. According to Petitioner, he surrendered to U.S. Customs and Border Protection (CBP) upon entry. On October 5, 2025, the Department of Homeland Security ("DHS") served Petitioner with a Notice to Appear, charging him with being an alien present in the United States without being admitted or paroled. According to Petitioner, he was released that same day on his own recognizance pursuant to 8 U.S.C. § 1226(a), enrolled in the Intensive Supervision Appearance Program ("ISAP"), which required him to wear a GPS ankle monitor, submit regular check-ins, and comply with reporting obligations. According to Petitioner, he thereafter applied for asylum, withholding of removal, and protection under the Convention Against Torture.

---

[1] Although the allegations are improperly verified, the Court has included allegations from Petitioner's Petition for Writ of Habeas Corpus and Motion for TRO in order to provide adequate background. *See* Local Rule 83-16.2.

Petitioner alleges that he complied with ISAP requirements, including attending check-ins and submitting required documentation.  However, on November 5, 2025, at approximately 6:00 a.m., Petitioner received a call from ICE, alleging an issue with his GPS system.  He was directed to report immediately.  Upon arrival, he was detained without prior notice or a hearing, alleging that Petitioner had unspecified violations.  Petitioner was initially detained at the Adelanto ICE Processing Center, but has since been transferred to the Desert View Annex, where he is currently detained. At the time of his detention, Petitioner had a scheduled hearing on his asylum application on May 6, 2026.

According to Petitioner, no final order of removal has been entered, and Petitioner has "no significant criminal record, with only a minor trespassing citation."

In his Application, Petitioner claims that he is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), and seeks an order from this Court ordering Respondents to release Petitioner from custody immediately, or in the alternative, an order requiring Respondents to provide him with an individualized bond hearing before an Immigration Judge within a fixed period of time.[2]  In its Response, the Respondents state in relevant part:

> Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025) *reconsideration granted in part*, --- F. Supp. 3d ---, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), *and amended and superseded on reconsideration*, --- F. Supp. 3d ---, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). . . .
>
> While the Petitioner seeks immediate release, to the extent Petitioner would be entitled to any remedy via the TRO Motion, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a). Accordingly, Respondents acknowledge that Petitioner's claim in this action appears to be subject to the *Bautista* judgment, the order enforcing the same, and to any applicable appellate proceedings relating to it. To the extent a bond hearing is ordered here, it should be consistent with what Courts in this District have generally ordered in similar cases, which is to require an 8 U.S.C. § 1226(a) hearing to be provided in seven days.

## II.     LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same.  *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7,

---

[2]Because Respondents had notice and an opportunity to respond and Petitioner briefed the issues thoroughly, and the standard for a TRO and a preliminary injunction are the same, the Court will treat Petitioner's Motion for TRO as a motion for preliminary injunction.

22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.,* 758 F.3d 1069, 1071 (9th Cir. 2014) (*citing Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the Winter standard" (*Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021)), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits' and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

The Ninth Circuit distinguishes between "mandatory" and "prohibitory" injunctions. *Hernandez v. Sessions*, 872 F.3d 976, 997–98 (9th Cir. 2017). Prohibitory injunctions maintain the status quo, preventing further constitutional violations. *Id.* at 997. By contrast, mandatory injunctions go further, ordering "a responsible party to 'take action.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (*quoting Meghrig v. KFC W., Inc.*, 516 U.S. 479, 484 (1996)). A mandatory injunction "'goes well beyond simply maintaining the status quo [and is thus] . . . particularly disfavored.'" *Id*. (*quoting Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). Accordingly, the Ninth Circuit has held that mandatory injunctions "should not be approved in the absence of a risk of 'extreme or very serious damage.'" *Hernandez*, 872 F.3d at 997 (*quoting Marlyn Nutraceuticals, Inc*., 571 F.3d at 879). Mandatory injunctions are most likely to be appropriate when "the status quo . . . is exactly what will inflict the irreparable injury upon complainant." *Id.* (*quoting Friends for All Children, Inc. v. Lockheed Aircraft Corp*., 746 F.2d 816, 830 n.21 (D.C. Cir. 1984)).

### III. CONCLUSION

In light of the Government's acknowledgment that Petitioner appears to be a member of the *Bautista* class and appears to be subject to the *Bautista* judgment, Petitioner's Motion for a temporary restraining order and preliminary injunction is **GRANTED in part**. The Court **ORDERS** that: Respondents are enjoined from continuing to detain Petitioner unless he is provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven (7) days of this Order.

The Court, however, will not grant Petitioner the additional relief he seeks, because he has failed to meet his burden to establish that he is likely to succeed on the merits, or show serious questions going to the merits, on his claims (at least on this record). *Winter*, 555 U.S. at 22. Although a Court may grant a TRO based on "evidence that is less complete than in a trial on the merits" (*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)), Petitioner relies solely on argument and factual allegations that lack evidentiary support. Indeed, Petitioner merely relies on the factual allegations contained in his Petition for Habeas Corpus, which are not verified by Petitioner or anyone with personal knowledge of the facts. Instead, the verification was provided by his attorney Rajbir S. Bathla, who fails to set forth the reason why it has not been verified by the person in custody in violation of Local Rule 83-16.2. Moreover, Petitioner's Petition for Writ of

Habeas Corpus and Motion for TRO do not include any exhibits from which the Court may glean additional facts.  As a result, Petitioner has failed to provide any admissible evidence to support his claims.

The Court recognizes that at this stage of the proceedings it "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).  However, given that the allegations of the Petition for Habeas Corpus were not properly verified in accordance with Local Rule  83-16.2, the Court will not grant Petitioner any relief beyond the bond hearing.

Rule 65(c) provides that a court "may issue a preliminary injunction or temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'"  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)).  In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id.* (citation omitted).  As a result, the mandatory language of Rule 65(c) does not "absolve[ ] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond."  *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).  In this case, Respondents have not demonstrated any likelihood of harm if the Court grants the requested relief, and has not requested a bond if that relief is granted.  In addition, a bond would pose a hardship on Petitioner.  Accordingly, the Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

IT IS SO ORDERED.